UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
KIAZA LOCCENITT,

        Plaintiff,

  -v-                               No.  12 Civ. 948 (LTS)(MHD)

CITY OF NEW YORK et al.,

        Defendants.
-------------------------------------------------------x

MEMORANDUM ORDER

        Pro se Plaintiff Kiaza Loccenitt ("Plaintiff"), a Muslim inmate in the custody of the New York City Department of Correction ("DOC"), brings this action alleging that Defendants (the City of New York; Dora Schriro, DOC Commissioner; Hildy J. Simmons, Commissioner of the Board of Correction; Kathleen Mulvey and Rose Agro, Wardens of the George R. Vierno Center ("GRVC"); Deputy Warden A. Bailey (s/h/a "Deputy Bailey, Deputy of Security for GRVC"); Deputy Warden K. Williams; Captain L. Smith; and Captain H. Medina (collectively "Defendants")) violated his civil rights during his incarceration at the GRVC. Plaintiff alleges violations of his rights under the First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc–1, as well as New York Corrections Law § 610.  Defendants move to dismiss the Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court has considered carefully the parties' submissions and arguments. For the following reasons, Defendants' motion to dismiss in granted in part and denied in part.

BACKGROUND

Plaintiff alleges that Muslims at the GRVC have been denied Halal meals, which he describes as "the foods [M]uslims are to eat that is prayed over by a Iman [sic]."  (Am. Compl., Prelim. Stmt. ¶ 8.)  Plaintiff also alleges that, although a religious leader was assigned to inmates in the general population of the GRVC, that Special Housing Unit ("SHU") inmates did not receive an Imam and that Defendants give "special treatment to other religious groups."  (Id. ¶¶ 9, 11.)  Plaintiff further alleges that, from October 6, 2010 to July 15, 2011, from August 2011 to September 2011, and from December 3, 2011, continuing until the present, he and all of the other Muslim inmates in GRVC's SHUs have not been permitted to attend Jummah Services,[1] a congregational service "commanded by the Qu'ran," which must be held every Friday, "after the sun reaches its zenith and before the . . . afternoon prayer."  (Id. ¶¶ 1, 2, 4.)  Plaintiff alleges that the GRVC allows Muslims to congregate during the Ramadan season and asserts that Muslim inmates should also be allowed to congregate for Jummah services throughout the year, as Jummah services are equally important to Muslims as Ramadan.  (Id. ¶ 7.)

Plaintiff asserts that he has exhausted the administrative remedies available to him, as he has written "numerous grievances and complaints" to the DOC, the Board of Correction, the "Inmate grievance resolution committee with the facility of GRVC and its respecti[v]e coordinator(s)," the Wardens of GRVC, and the Central Office Review Committee,

---

[1] As the Defendants highlight in their motion to dismiss, the term "Jummah" has been spelled various ways by courts, but for the purposes of this Order, the Court will adopt the Plaintiff's spelling.

but has yet to receive a "proper response." (Id. ¶ 13.)[2] Plaintiff claims loss of liberty, mental and emotional injury, resulting from Defendants' alleged violations of his rights (Id. ¶ 14), and he seeks $500,000 in "loss of liberty damages," unspecified other monetary and punitive damages, and injunctive relief in the form of an order requiring the DOC to "provide Jummah Services weekly and as well provide Halal meals for all Muslims." (Am. Compl., Prayers for Relief ¶¶ 1-5.)

DISCUSSION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). To survive a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, the plaintiff must "allege facts that affirmatively and plausibly" suggest that jurisdiction exists. Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011). "In considering a motion to dismiss for lack of subject matter jurisdiction, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff. However, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Convergent Wealth Advisors LLC v. Lydian Holding Co., No. 12 Civ. 1199(SAS), 2012 WL 2148221, at *2 (S.D.N.Y. June 13, 2012) (internal quotation marks and citations omitted).

---

[2] The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before he can bring an action with respect to prison conditions. See 42 U.S.C. § 1997e(a) (codification of exhaustion requirement).

When deciding a motion to dismiss under Rule 12(b)(6), a court must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). However, to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In the case of pro se litigants, the court must read the pleadings leniently and construe them to raise "the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted). This is especially true when a pro se plaintiff's civil rights are at issue. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Nonetheless, courts must still "examine such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

Liberally construed, Plaintiff's Amended Complaint asserts three general claims deriving from Plaintiff's incarceration in the SHU at the GRVC: (1) that Muslim SHU inmates were denied Halal meals; (2) that Muslim SHU inmates were denied the opportunity to attend weekly Jummah services; and (3) that Muslims in the SHU were not assigned an Imam, or religious leader, while inmates of other religions had religious leaders with whom to speak and conduct worship, and that other religious groups received special treatment.

Subject Matter Jurisdiction

"To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful

conduct of the defendant" and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lamar Advertising of Penn, LLC v. Orchard Park, NY, 356 F.3d 365, 373 (2d Cir. 2004) (internal quotation marks and citations omitted). A "generalized grievance against allegedly illegal government conduct is insufficient to provide standing." United States v. Hays, 515 U.S. 737, 745 (1995) (citing cases). Plaintiff must allege that he personally "suffered an injury in fact," or "an invasion of a legally protected interest." Tirado v. Lindsay, No. 07 civ. 2926(CBA)(LB), 2009 WL 4065958, at *3 (E.D.N.Y. Nov. 19, 2009) (Order adopting Report and Recommendation) (quoting Arar v. Ashcroft, 532 F.3d 157, 191 (2d Cir. 2008)).

        Plaintiff alleges that Muslim inmates "were also denied religious diets" (Am. Compl., Prelim. Stmt. ¶ 8), but does allege that he himself ever requested such a diet in accordance with his religious beliefs and that his request was denied. Plaintiff also does not claim that he suffered any injury in relation to his diet while in DOC custody.[3] Plaintiff does not mention any circumstances in which Halal meals were not made available to him or when the food was otherwise non-compliant with his religious beliefs. Although Plaintiff suggests that all of the Muslim inmates may have been harmed by the failure to serve Halal food, this general injury "cannot form the basis for a vicarious claim by him on their behalf." Randolph v. City of N.Y. Dep't of Corr., No. 05 Civ. 8820(MHD), 2007 WL 2660282, at *9 (S.D.N.Y. Sept. 7, 2007) (Memorandum Order and Report & Recommendation) (inmate's claim dismissed for lack of

---

[3] Plaintiff's Opposition memorandum cites to McEachin, 357 F.3d at 203 as an example of a case in which the Court held that denying an inmate food satisfying the dictates of his faith was an unconstitutional burden on his free exercise rights but, in that case, the plaintiff provided the location, names of the correction officers involved and other details regarding the incident. Here, the Plaintiff makes blanket and conclusory allegations and does not allege that he requested and was denied any Halal meal.

standing when inmate "complain[ed] about both the sale of pork products at the commissary and the prison's failure to provide a list of those products to the inmates, [but] he [did] not allege, or even hint that he had ever unknowingly purchased a pork product from the commissary, much less consumed it . . ."). Accordingly, Defendants' motion to dismiss Plaintiff's Halal claim for lack of subject matter jurisdiction is granted without prejudice. Plaintiff may file a second amended complaint within 30 days of the date of this Order adding facts specifying the occasion(s) and circumstances in which Plaintiff contends that he personally has been denied a Halal meal and the impact of that denial on the practice of his religion.

First Amendment Free Exercise/RLUIPA Claims

Defendants also argue that Plaintiff has failed to state cognizable claims regarding the violation of his rights to have Halal meals[4] and attend Jummah services under the Free Exercise Clause, pursuant to Section 1983 or the RLUIPA. In order to make out a claim of a violation of the Free Exercise Clause or the RLUIPA, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salhuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006) (citation omitted).[5] Restrictions on free exercise

---

[4] Plaintiff's Halal meal claim also fails here for lack of specificity as explained above in the section addressing Defendants' 12(b)(1) motion. To survive a 12(b)(6) motion, Plaintiff needs to allege specific facts as to when, where and by whom he was denied a Halal meal, or meals, and how that denial impacted him. Plaintiff has 30 days from the date of this Order to file a second amended complaint providing more factual allegations regarding the Halal meal claim, stating specifically whether he himself was ever denied a Halal meal and the injury he claims he suffered.

[5] "Although the Second Circuit has applied the 'substantial burden' test in its most recent prison Free Exercise cases, it has done so while explicitly refusing to adopt or endorse the test." Rahman v. Fischer, No. 10 Civ. 1496(LEK)(TWD), 2012 WL 4492010, at *11 (N.D.N.Y. Sept. 28, 2012) (applying the substantial burden test to the Free Exercise Clause claim in the case before it).

rights are only permissible where they are "reasonably related to legitimate penological interests." Pugh v. Goord, 571 F. Supp. 2d 477, 494 (S.D.N.Y. 2008) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). "Under the RLUIPA, a government shall not impose a substantial burden on the religious exercise of inmates . . . unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means." Malik v. City of New York, No. 11 Civ. 6062(PAC)(FM), 2012 WL 3345317, at *12 (Aug. 15, 2012) (Report and Recommendation) (internal quotation marks and citation omitted). "[A]ccommodation must be measured so that it does not override other significant interests . . . [and] with particular sensitivity to security concerns." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005).

It is "well-established that prisoners have a constitutional right to participate in congregate religious services." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993). The Second Circuit has held further that it is "error to assume that prison officials [are] justified in limiting [an inmate's] free exercise rights simply because [he or she is] in disciplinary confinement." Young v. Coughlin, 866 F.2d 567, 570 (2d Cir. 1989) ("we have long held that prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible").

Plaintiff alleges that he, and other Muslim inmates, are required by their religion to attend a weekly congregational service, known as Jummah, but that, while in the SHU, they are not permitted to do so. Defendants assert that the claim should be dismissed because the alleged refusal to permit Muslim inmates in the SHU from attending Jummah services was "reasonably related to legitimate penological interests." This contention is more properly addressed after discovery has been conducted and the Court has some basis for determining Defendants' motivation. See Vann v. Fischer, No. 11 Civ.1958 (JPO), 2012 WL 2384428, at *7

(S.D.N.Y. June 21, 2012) (the argument about whether defendants' behavior is justified by a legitimate interest "is largely a question to be addressed after the discovery of relevant evidence . . ."). Defendants' argument that the fact that Muslim inmates can celebrate Ramadan (a religious holiday) provides a sufficient alternative to attending weekly Jummah services is also unavailing at this stage of the litigation. The record is likewise too undeveloped to permit the Court to determine whether the challenged practice furthers a compelling governmental interest by the least restrictive means. Accordingly, the motion to dismiss Plaintiff's Jummah claim brought pursuant to Section 1983 and the Free Exercise Clause, and pursuant to the RLUIPA, is denied.

Establishment Clause Claims

To the extent that Plaintiff brings claims under Section 1983 alleging violations of the Establishment Clause, the Defendants also move to dismiss these claims. The Establishment Clause prohibits "excessive government entanglement with religion." Rweyemamu v. Cote, 520 F.3d 198, 208 (2d Cir. 2008) (internal quotation marks and citation omitted). "[G]overnment programs [must] remain neutral toward religion. Furthermore, the 'First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general.'" Muhammad v. City of New York Dept. of Corrections, 904 F. Supp. 161, 197 (S.D.N.Y. 1995) (internal citations omitted) (describing how courts have differed on whether providing a chaplain of one particular faith in prisons violates the Establishment Clause). Here, Plaintiff alleges that Defendants favor "all religions except [Islam]" and contends that the GRVC did not assign an Imam to the SHU population, while other religions received "special treatment." (Am. Compl., Prelim. Stmt ¶¶ 9, 11). Construing Plaintiff's allegations liberally, as required at this stage, Plaintiff's Amended Complaint sufficiently alleges an Establishment

Clause Claim. Defendants' motion to dismiss the Establishment Clause Claim is for this reason denied.[6]

### Personal Involvement of Individual Defendants

If a plaintiff seeks to impose damages liability on a government employee under Section 1983, he cannot rely on the principle of respondeat superior. See, e.g., Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Under 42 U.S.C. § 1983, "[p]roof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages. . . ." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). Accordingly, a defendant cannot "be held liable for damages for constitutional violations merely because he held a high position of authority." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). To establish supervisory liability under Section 1983, Plaintiff must show "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Personal involvement is also a prerequisite to a defendant's liability under the RLUIPA. Joseph v. Fischer, No. 08 Civ. 2824(PKC), 2009 WL 3321011, at *18 (S.D.N.Y. Oct. 8, 2009) (plaintiff must allege a defendant's personal involvement in order to state a claim under RLUIPA and, after Iqbal,[7] "an official's denial of a grievance alleging a constitutional deprivation, without more, does not amount to personal involvement in the deprivation of that

---

[6] Defendants also move to dismiss any claims asserted under the Equal Protection Clause, but Plaintiff has not mentioned this Clause in his Amended Complaint nor asserted clear arguments thereunder, and so the Court does not construe the Amended Complaint to assert such a claim. Defendants have not specifically moved to dismiss Plaintiff's claim brought under New York Corrections Law Section 610, "Freedom of Worship," and so that claim survives.

[7] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

right"). A plaintiff may establish personal involvement by showing that "the defendant participated directly in the alleged constitutional violation, [or] . . . the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom. . . ." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). [8]

       Plaintiff states that Defendant Hilda J. Simmons "is the highest ranking member of the D.O.C. [and] was informed of the religious violations and failed to remedy the issue" and that she "is also responsible of [sic] the supervision, oversight and religious service management." (Id. ¶ 20.) Plaintiff states that Commissioner Dora Schriro is liable because she is "responsible for the policy, practice, supervision, implementation, and conduct" of all D.O.C. personnel and their compliance with the civil rights laws and "is also responsible for supervisor liability for failure to remedy the situation after being informed of the [ ] complaint." (Id. ¶ 21.) These two allegations satisfy the requirement for pleading supervisory liability since they support the inference that, as supervisors, these two Defendants created or permitted the continuance of the policy or custom under which the wrongs occurred and, after being informed of Plaintiff's alleged civil rights violations, failed to remedy ongoing wrongs.

       As for Defendants Kathleen Mulvey, Rose Argo, Deputy Warden A. Baily,

---

[8]    While the Supreme Court in Iqbal may have narrowed the viability of some of the Colon predicates for supervisory liability, the two predicates that are relevant here have been held by courts in this district to have survived Iqbal. See, e.g., Joseph, 2009 WL 3321011, at *14 ("under Iqbal, . . . [a] defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right"); Bellamy v. Mount Vernon Hosp., No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("[o]nly the first and part of the third Colon categories pass Iqbal's muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other Colon categories impose the exact types of supervisory liability that Iqbal eliminated—situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate").

Deputy Warden K. Williams, Captain L. Smith and Captain H. Medina, Plaintiff merely lists these Defendants as individuals who were "made aware of the violations," and "failed . . . to remedy the situation." (Am. Compl., Parties ¶ 22.) Plaintiff does not suggest that they were directly involved in the alleged violations, or in the creation of a policy or custom that permitted such alleged violations, or had any authority or ability to prevent the violations from occurring. Plaintiff's general allegations against these lower-level individual Defendants are not sufficient to demonstrate a basis for subjecting them to personal liability under Section 1983. In the Court's February 27, 2012, Order, the Plaintiff was warned that he "must specifically state how each named Defendant prevented him from practicing his religion and participating in religious services." (Feb. 27, 2012, Ord. at 3). Plaintiff did not do this; therefore, as to these individual Defendants, Plaintiff's claims are dismissed.

        Municipal Liability

A claim for municipal liability can survive a motion to dismiss where the plaintiff "makes[s] factual allegations that support a plausible inference that the constitutional violation took place pursuant to either a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missell v. City of Monroe, 351 F. App'x. 543, 545 (2d Cir. 2009). Here, Plaintiff alleges that the City of New York operates a number of detention facilities in which the City promulgates and implements religious policies and that Plaintiff's claims in this case are a result of those religious policies. (Am. Compl., Parties, ¶ 19.) It is plausible to infer, that if the allegations in Plaintiff's Amended Complaint are true, there was a policy in place that denied certain civil rights to Muslim inmates in SHU units. Defendants' motion to dismiss Plaintiff's claims against Defendant the City of New York is denied.

<u>Loss of Liberty Damages, Money Damages or Punitive Damages</u>

Plaintiff requests injunctive relief and $500,0000 in "loss of liberty damages" as well as "money damages" and punitive damages in amounts to be determined by a jury. (Am. Compl., Prayer for Relief ¶¶ 1-4.) The Prison Litigation Reform Act of 1997 ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Second Circuit has held that this section applies to claims brought under Section 1983. <u>Thompson v. Carter</u>, 284 F.3d 411, 416 (2d Cir. 2002) ("Section 1997e(e) applies to all federal civil actions including claims alleging constitutional violations"). "Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" <u>Lee v. Edwards</u>, 101 F.3d 805, 808 (2d Cir. 1996) (internal quotation marks and citation omitted). To the extent that Plaintiff seeks monetary damages against any of the individual defendants under the RLUIPA, such claims are dismissed as money damages are not available under the RLUIPA against individual defendants in their individual or official capacities. <u>See</u> <u>Pugh</u>, 571 F. Supp. 2d at 507-09 (interpreting the RLUIPA).

Plaintiff does not allege that the deprivation of his rights caused a physical injury or that Defendants acted, or failed to act, out of evil intent or callous indifference. Accordingly, all of Plaintiff's claims for compensatory and punitive damages brought under Section 1983 and his claims against the individual Defendants, in their official and individual capacities, pursuant to the RLUIPA, are also dismissed.

CONCLUSION

For the foregoing reasons, Plaintiff's claims against the individual Defendants Mulvey, Agro, Bailey, Williams, Smith and Medina, are dismissed in their entirety. Plaintiff's claims for compensatory and punitive damages brought under Section 1983 as against all Defendants are dismissed. Plaintiff's monetary damages claims against the individual Defendants, in their official and individual capacities, pursuant to the RLUIPA, are also dismissed. The foregoing dismissals are with prejudice.

Plaintiff may file and serve a second amended complaint adding factual detail to his Halal meal claim. Plaintiff has 30 days from the date of this Order to file and serve this amended complaint, adding facts specifying the occasion(s) and circumstances in which Plaintiff contends that he personally has been denied a Halal meal and the impact of that denial on the practice of his religion. The second amended complaint will replace completely the current amended complaint, and therefore must include all of the factual allegations and claims that the Plaintiff wants the Court to consider concerning the availability of Halal meals, Jummah services and religious discrimination. If no such amended complaint is timely filed, the Halal meal claim will be deemed dismissed with prejudice.

This Memorandum Order resolves docket entry number 16. This case remains referred to Magistrate Judge Dolinger for general pretrial management.

SO ORDERED.

Dated: New York, New York
       March 15, 2013

                                            /S
                                            LAURA TAYLOR SWAIN
                                            United States District Judge

Copy mailed to Kiaza Loccenitt
               8751002495
               GRVC
               09-09 Hazen St
               East Elmhurst, NY 11370